IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| PROFESSIONAL TRANSPORTATION, INC.,<br>3700 East Morgan Avenue<br>Evansville, Indiana 47715 | : | CASE NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ACE AMERICAN INSURANCE COMPANY,<br>436 Walnut Street<br>Philadelphia, Pennsylvania 19106 | : | **COMPLAINT FOR DAMAGES** |
| | : | <u>**DEMAND FOR JURY TRIAL**</u> |
| <u>Waiver sent to</u>:<br>c/o CT Corporation System, S/A<br>150 W. Market Street, Suite 800<br>Indianapolis, IN 46204 | : | |
| | : | |
| Defendant. | : | |

Now comes Plaintiff Professional Transportation, Inc., by and through counsel, and for its Complaint for Damages against Defendant ACE American Insurance Company, alleges and states as follows:

## <u>PARTIES AND JURISDICTION</u>

1.     Plaintiff Professional Transportation, Inc. ("PTI") is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business located in Evansville, Indiana.

2.     On Information and belief, Defendant ACE American Insurance Company ("ACE") is a Pennsylvania corporation with its principal place of business located in Philadelphia, Pennsylvania.

1

3.     This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between PTI and ACE, and the amount in controversy exceeds $75,000, exclusive of costs and interest.

4.     This Court has personal jurisdiction over ACE because ACE has substantial contacts with Indiana.  ACE entered into multiple insurance contracts with PTI, under which ACE agreed to provide coverage for certain claims and liabilities against PTI.

5.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to PTI's claims occurred in this District.

## FACTS APPLICABLE TO ALL CLAIMS

6.     PTI provides ground transportation services to various companies in the railroad industry, including transportation of train and yard crew employees.

7.     The customer employees who are transported by PTI are "railroad workers" whose on-the-job injuries are subject to the Federal Employers Liability Act ("FELA").

8.     Prior to 2013, ACE had been a long-time insurance provider to PTI, including commercial automobile coverage for accidents involving the transportation of customer employees by PTI.

9.     For the specific claims at issue in this action, the commercial automobile coverages included a deductible endorsement, under which PTI had a significant deductible per accident in the amount of $500,000.00.  ACE's obligation to pay or defend under those policies and endorsements only applies to losses and expenses in excess of the deductible amount.  The relevant policies at issue are attached hereto as

2

Exhibits A and B.

10.    Under the policy attached as Exhibit A, the deductible endorsement provided that ACE would have no duty to defend any suit or pay any losses within the deductible amount, and PTI was responsible for all expenses and losses within the $500,000.00 per accident deductible amount.  A $500,000.00 per accident deductible was also in place under the policy attached as Exhibit B.

11.    Because PTI was essentially self-insured up to the $500,000.00 deductible amount, PTI was required to take an active role in managing its claims, investigating and evaluating FELA matters, and engaging counsel with FELA experience to defend cases, and accordingly it developed extensive in-house expertise regarding FELA claims and litigation.

12.    While PTI actively managed all FELA claims, the applicable policies required PTI to coordinate and administer the handling of all covered losses with a third party administrator, ESIS, Inc. ("ESIS"), which, upon information and belief, is a wholly owned subsidiary of ACE and/or a related entity.

13.    Prior to PTI moving its insurance business to another carrier in 2013, PTI was generally provided complete discretion with respect to settlement and litigation decisions occurring in advance of PTI meeting its deductible, and it actively participated in such decision-making even after exceeding its deductible.

14.    Even after PTI's deductible amount was exceeded in large dollar claim exposures, PTI had important interests with respect to subsequent settlement and litigation decisions, including customer relationships, settlement precedent which might raise plaintiff expectations in future cases, and the avoidance of excessive and/or

unreasonable settlements which would have the potential to cause significant increases to PTI's insurance costs for years to come.

15.     ACE had a duty to act with due care and in good faith with respect to settlement decisions, including the duty to give equal consideration to PTI's interests when pursuing the settlement of covered claims.

16.     Although the insurance policies were drafted to provide ACE broad discretion to settle any claim or suit against PTI, this policy language did not supplant ACE's obligation to act with due care and in good faith with respect to the settlement of claims on PTI's behalf.

## COUNT 1 – BAD FAITH

17.     PTI incorporates the allegations contained in Paragraphs 1 through 16 of its Complaint as if fully rewritten herein.

18.     Subsequent to PTI moving its insurance business to another carrier, a marked change in ACE's involvement in and control over claims and litigation against PTI developed, particularly in litigation matters where PTI had yet to reach its deductible amount.  Prior to 2013, ACE had never assumed primary control over cases where PTI had yet to meet its deductible without PTI's concurrence.

19.     ACE had an economic self-interest to pursue settlement of claims against PTI within or close to the applicable deductible amount, regardless of whether PTI's realistic liability exposure made the possibility of adverse judgment and/or costs in excess of the applicable deductible unlikely, as this would eliminate any possibility of a future judgment, costs or expenses which could result in ACE making some payment under the insurance policies purchased by PTI.

4

20.     ACE entered into a number of unreasonable settlements over PTI's objections and without any reasonable consideration of PTI's interests, two of which resulted in significant economic losses to PTI.

## FINLEY ACTION

21.     On February 7, 2010, PTI, pursuant to a contract with Union Pacific Railroad Company ("Union Pacific"), was transporting railroad workers Gary Finley ("Finley") and Steven Finney to a motel in Dexter, Missouri.  While driving approximately 10 m.p.h., PTI driver Kenneth Wiseman inadvertently hit a pothole.

22.     Finley, who was restrained by shoulder and lap seat belts, alleged injury to his lower back, but no other occupants of the vehicle were injured or characterized the incident as meaningful.

23.     Finley subsequently filed a lawsuit against PTI and Union Pacific in St. Claire County, Illinois (the "Finley Action").

24.     PTI was entitled to insurance coverage for the Finley Action under the ACE insurance policy attached hereto as Exhibit A.

25.     After suit was filed, PTI retained an experienced attorney with extensive FELA litigation experience in the jurisdiction where the action was filed, engaged medical and engineering experts to assess liability and damages, and aggressively defended the case based on serious questions concerning liability and Finley's alleged injuries from such an inconsequential incident.

26.     PTI's counsel completed a detailed evaluation of the Finley Action and projected a verdict range between $0 and $350,000, and PTI's internal claims professionals agreed with such assessment and informed ACE that PTI intended to try

5

the case.

27.     After being informed of PTI's intentions to try the Finley Action, ACE, which had no meaningful involvement in the defense of the Finley Action, failed to properly evaluate Finley's claim and instead placed its own interests above the interests of PTI when, against the strenuous objections of PTI, it settled the Finley Action for $450,000.00 and instructed PTI to pay $392,697.09 of its remaining deductible to effect settlement.

28.     PTI disputed the settlement and the payment demanded by ACE, but it nonetheless made the payment under protest subsequent to ACE threatening to foreclose on certain collateral which would have negatively impacted the financials of PTI and certain related entities.

## SAMUEL ACTION

29.     On February 1, 2011, PTI, pursuant to a contract with CSX Transportation, Inc. ("CSX"), was transporting railroad worker Craig Samuel ("Samuel") from a location in Savannah, Georgia.  The seat Samuel was sitting in was not properly secured to the floor of the vehicle due to the negligence of a third party service provider, S.C.W. Management Company, Inc. d/b/a Savannah Car Wash and Detail Center ("SCW"), and Samuel alleged certain injuries when his seat shifted backwards while the vehicle was in motion.

30.     Samuel subsequently filed a lawsuit against CSX in Chatham County, Georgia, and pursuant to an indemnification agreement PTI was required to defend and indemnify CSX for any judgment arising out of such action (the "Samuel Action").

31.     SCW was named as a third party defendant in the Samuel Action.

32.     PTI was entitled to insurance coverage for the Samuel Action under the ACE insurance policy attached hereto as Exhibit B.

33.     The Samuel Action went to trial and Samuel was awarded $465,000.00, and the jury allocated the damages equally between CSX and SCW.

34.     SCW appealed the judgment which required it to pay $232,500.00 toward Samuel's damages.

35.     To avoid legal complications arising from SCW's refusal to make any payment on the verdict, PTI paid $334,860.02 and ACE paid $130,139.98 to satisfy the judgment.

36.     ACE assumed control of the Samuel Action after PTI made payment on the judgment and, subsequent to SCW's appeal, ACE, without any notice to or consultation with PTI, accepted a compromise payment of $150,000.00 from SCW and thereby diminished the anticipated recovery against SCW by $82,500.00.

37.     Had PTI and SCW made payments pursuant to the judgment, PTI's economic impact would have been reduced by $102,360.00, and PTI assessed SCW's prospects for success on appeal as negligible.

38.     PTI had no prior notice of ACE's settlement efforts and was deprived of the opportunity to participate in such efforts, to offer input on its interests, or to potentially assume control of the appeal at its costs in order to maximize the recovery and mitigate its costs in the Samuel Action.

39.     ACE notified PTI of the settlement and, on May 22, 2014, the ACE claims representative proposed in writing that PTI and ACE allocate the recovery based upon their respective payments toward the judgment, and PTI accepted this proposal without

7

objection or further conditions.

40.    Pursuant to this agreement, and as confirmed by ESIS, an ACE

subsidiary, PTI would receive $108,000.00 and ACE would receive $42,000.00 of the

$150,000.00 recovery.

41.    On July 9, 2014, the ACE claims representative reconfirmed ACE's

agreement on the allocation of the recovered funds and requested that PTI's attorney

forward to ACE the check for the recovered funds, which he had been holding pending

confirmation of an agreement between ACE and PTI.

42.    On September 10, 2014, the ESIS representative contacted the ACE

claims representative concerning the status of ACE's outstanding payment to PTI for its

agreed allocation of the recovered funds, and the ACE claims representative responded

that a check for PTI's share of the recovered funds would be issued that day.

43.    On October 15, 2014, in response to additional inquiries on the

outstanding payment to PTI, the ACE claims representative reneged on the agreement

between ACE and PTI, and communicated that PTI was only entitled to $19,860.02

from the $150,000.00 recovery.

44.    Upon notification of ACE's refusal to issue payment pursuant to the

agreed allocation, the ESIS representative, in writing, confirmed that PTI was never

consulted by ACE concerning the settlement with SCW, and she additionally questioned

whether "PTI's interests were fully considered in the negotiations."

## BAD FAITH ACTIONS BY ACE

45.    ACE's settlement of the Finley Action was done contrary to

recommendations of experienced FELA counsel who had handled the case prior to

8

settlement without any substantive involvement by ACE, and who advised that a defense verdict was possible and estimated that a worst case scenario would result in a verdict of $350,000.00.

46.     ACE's settlement of the Finley Action was done over the strenuous objections of PTI, whose experienced in-house claims professionals concurred with the assessment of PTI's counsel.

47.     ACE's settlement of the Finley Action was done without a reasoned or good faith evaluation of PTI's liability exposure or Finley's alleged damages given the specific facts and law applicable to the Finley Action.

48.     ACE's settlement of the Finley Action was done without equal consideration of PTI's interests and was instead motivated entirely by ACE's own self-interests.

49.     ACE's settlement of PTI's claim against SCW in the Samuel Action was done without a reasoned or good faith evaluation of the likely prospects for full recovery against SCW on appeal and/or the expected mitigation of PTI's costs.

50.     ACE's settlement of PTI's claim against SCW in the Samuel Action was done without consultation with or notice to PTI, and PTI was deprived of the opportunity to participate in settlement negotiations and/or assert its interests.

51.     ACE's settlement of PTI's claim against SCW in the Samuel Action was done without equal consideration of PTI's interests and was instead motivated entirely by ACE's own self- interests.

52.     ACE's refusal to issue the agreed payment to PTI from the monies recovered from SCW and its effort to compel PTI to accept a lesser amount was done

without equal consideration of PTI's interests and in bad faith.

53.     ACE's above-referenced acts and omissions constitute intentional, knowing violations by ACE of its obligation to act with due care and in good faith with respect to the general duties it owed to PTI under the applicable insurance policies and, specifically, in the settlement of claims on PTI's behalf.

54.     ACE's actions constitute willful and wanton conduct, and were not the result of mere negligence or mistake, and PTI is therefore entitled to punitive damages and recovery of attorneys' fees and costs.

55.     As a direct and proximate result of ACE's bad faith actions, PTI is entitled to damages in excess of $75,000.00, punitive damages, prejudgment interest, costs and attorneys' fees.

## COUNT 2 – BREACH OF CONTRACT

56.     PTI incorporates the allegations contained in Paragraphs 1 through 55 of its Complaint as if fully rewritten herein.

57.     PTI and ACE entered into an agreement on the allocation of funds recovered from SCW in the Samuel Action, agreeing that PTI would receive $108,000.00 from such funds.

58.     ACE failed and refused to pay PTI the agreed upon amount of $108,000.00 from the recovered funds, and ACE accordingly breached its agreement with PTI.

59.     As a direct and proximate result of ACE's breach of express and implied contractual duties, PTI is entitled to damages in excess of $75,000.00, prejudgment interest, costs and attorneys' fees.

10

## <u>COUNT 3 – PROMISSORY ESTOPPEL</u>

60.     PTI incorporates the allegations contained in Paragraphs 1 through 59 of its Complaint as if fully rewritten herein.

61.     ACE failed to provide PTI notice or an opportunity to participate in the settlement efforts with SCW in the Samuel Action, and ACE did so without regard to or consideration of PTI's interests.

62.     After ACE settled PTI's claim against SCW, which significantly compromised the amount SCW was obligated to pay under the judgment, ACE promised PTI that it would receive $108,000.00 for the funds recovered from SCW in the Samuel Action.

63.     Based upon such representation, PTI's counsel released the check for funds recovered from SCW to ACE with PTI's expectation that it would receive payment from ACE as promised.

64.     ACE was or should have been aware that PTI would rely on its representation concerning payment from the funds recovered from SCW, and PTI in fact relied on such representation and has been damaged by ACE's refusal to issue the payment as promised.

65.     As a direct and proximate result of ACE's failure and refusal to issue payment pursuant to its promise, PTI is entitled to damages in excess of $75,000.00, prejudgment interest, costs and attorneys' fees.

**WHEREFORE,** Plaintiff Professional Transportation, Inc. demands judgment against Defendant ACE American Insurance Company as follows:

A.     An award of compensatory damages in excess of $75,000.00;

81117235.1

B. An award of punitive damages;

C. Prejudgment interest;

D. Costs and attorneys' fees; and,

E. Such other and further relief as the Court deems just and proper

Respectfully submitted,

s/ Lowell T. Woods, Jr.
Lowell T. Woods, Jr. (18122-49)
Victoria L. Nilles (21366-71)
TAFT STETTINIUS & HOLLISTER LLP
40 N. Main St., Suite 1700
Dayton, OH  45423
(Ph)   937-228-2838
(Fax)  937-228-2816
woods@taftlaw.com
vnilles@taftlaw.com

*Attorneys for Plaintiff*
*Professional Transportation, Inc.*

12

## DEMAND FOR JURY TRIAL

Plaintiff Professional Transportation, Inc. hereby demands a trial by jury in this action.

s/ Lowell T. Woods, Jr.
Lowell T. Woods, Jr. (18122-49)
Victoria L. Nilles (21366-71)
TAFT STETTINIUS & HOLLISTER LLP
40 N. Main St., Suite 1700
Dayton, OH  45423
(Ph)   937-228-2838
(Fax)  937-228-2816
woods@taftlaw.com
vnilles@taftlaw.com

*Attorneys for Plaintiff*
*Professional Transportation, Inc.*

81117235.1